Texas & Pacific Railway Company v. Shawnee Cotton Oil Company et al.

Decided April 10, 1909.

**1.—Carriers—Failure to Furnish Cars—Contract—Breach—Liability.**

Where the carrier makes a contract with the shipper to furnish cars at a given time to transport cattle, then the fact that the shipment of cattle over the carrier's line is so great at such time that it does not have cars sufficient to enable it to furnish the cars contracted for, will constitute no defense to an action for breach of that contract.

**2.—Same—Case Distinguished—Case Followed.**

Case distinguished, Houston & T. C. Ry. Co. v. Smith, 63 Texas, 326. Case followed, Gulf, C. & S. Fe Ry. Co. v. Hume, 87 Texas, 219.

**3.—Same—Contract to Furnish Cars.**

Where the evidence was that the shipper desired to ship cattle and, on ascertaining that the defendant carrier was unable to furnish cars because of a rush of business, arranged with another carrier to furnish the necessary cars, and that the defendant agreed to receive said cars for such purpose and did receive them and started them to the shipping point, and on the same day notified the shipper that it had received the cars and would take them out at once for the cattle and for the shipper to at once get the cattle ready to be loaded, and that acting on this advice, the shipper did in fact get the cattle ready for loading on such day, a finding that the carrier expressly contracted to furnish the cars at a certain time was supported.

**4.—Contract of Carriage—Discrimination.**

A contract to transport cattle in cars furnished by the shipper at a certain time, when congestion of traffic and press of business prevents the carrier from promptly accepting and handling all the freight tendered for carriage, will not be held void unless the same is an unjust discrimination as defined by the statute; and to be an unjust discrimination it must appear that a preference was given the shipper over shippers of livestock who had furnished the cars in which the same were to be transported. Revised Statutes, art. 4574.

**5.—Findings of Fact—Bill of Exceptions—Practice.**

The failure of the court to file conclusions of fact when requested will not be considered an appeal without a bill of exception taken before adjournment of court.

Appeal from the District Court of Hunt County. Tried below before Hon. R. L. Porter.

*T. B. McCormick* (W. L. Hall, of counsel), for appellant.—A carrier is not liable for inability to promptly accept and carry all freight tendered to it if there arises an unexpected press of business, for the prompt handling of which its facilities are inadequate; provided the carrier could not have reasonably anticipated and provided against such situation by a timely and corresponding increase of its facilities. Houston & T. C. Ry. Co. v. Smith, 63 Texas, 326-327; Hutchinson on Carriers, 3d ed., sec. 146, pp. 495-496; Houston & T. C. Ry. Co. v. Mayes, 201 U. S., 321, 50 Law ed.; Texas & P. Ry. Co. v. Barrow, 94 S. W., 176-177.

If a carrier, while its line is suffering from a heavy congestion of traffic and press of business so that it can not promptly accept and handle in due order all of the freight that is being tendered for shipment, during the continuance of such conditions, shall contract to carry freight for a customer out of its regular order and ahead of others of its customers having prior right, such contract so made is illegal and can not be enforced, and if breached by the railway company affords the party with whom it was made no right of action that the courts will enforce. Houston & T. C. Ry. Co. v. Smith, 63 Texas, 328; Queen Ins. Co. v. State ex rel. Attorney-General, 86 Texas, 274; Goodman v. McGehee, 31 Texas, 256; Davis v. Sittig, 65 Texas, 501; Labbe v. Corbett, 69 Texas, 505; Seeligson v. Lewis, 65 Texas, 223; Whitis v. Polk, 36 Texas, 626; Jones v. Williams, 41 Texas, 401; Edwards v. Jennings,

89 Texas, 620; Reed v. Brewer, 90 Texas, 149; Fuqua v. Pabst Brewing Co., 90 Texas, 302.

*Looney & Clark,* for appellee Shawnee Cotton Oil Company.

BOOKHOUT, Associate Justice.—This was a suit brought by appellee Shawnee Cotton Oil Company against the Texas & Pacific Railway Company, the Missouri, Kansas & Texas Railway Company and the Missouri, Kansas & Texas Railway Company of Texas, to recover damages alleged to have been sustained by a shipment of cattle made by the plaintiff over the lines of the defendant railways between Iatan, Texas, and Shawnee, Oklahoma, during the month of December, 1906. The plaintiff alleged that on or about November 27, 1906, it owned 878 head of two and three-year-old steer cattle, which it desired to ship to Shawnee; that the Texas & Pacific Railway Company claimed that, owing to a rush of business, it could not immediately furnish cars for the shipment, and, as plaintiff was desirous of an immediate shipment to prevent deterioration if not immediately transported, it arranged with the Missouri, Kansas & Texas Railway Company of Texas to furnish the necessary cars to the Texas & Pacific Railway Company, and that these two companies agreed and arranged with the plaintiff by that means to at once and within a reasonable time furnish and have at Iatan the necessary cars to transport the cattle, and that said companies failed and refused to comply with said arrangement and did not have the cars at Iatan until December 19th, when twenty cars were furnished, and until December 21st, when ten additional cars were furnished. That relying on said understanding the plaintiff at once got his cattle ready, but that on account of the failure of the defendants to furnish the cars as agreed, it was kept waiting from time to time, not knowing when the cars would arrive and being required to keep a man in charge at expense, and that by reason of these facts the cattle deteriorated in their market value $2 per head, and its agent cost it in expense $100; that the defendants handled the shipments as partners, and that in the transportation a number of head of the cattle were killed or injured. Plaintiff prayed for a judgment against all of the defendants for the damage incident to not delivering the cars and for the loss of two head of cattle the sum of $1,985, and against the Missouri, Kansas & Texas Railway Company and the Missouri, Kansas & Texas Railway Company of Texas it claimed an additional damage for the injuries to the shipment in route, $377.

Defendant the Texas & Pacific Railway Company, after exceptions and a general denial and a denial of partnership, pleaded that at the time demand was made upon it for cars it was unable immediately to comply with said demand, because at that time there existed throughout the country the most serious congestion of traffic that had occurred in a great many years, if, in fact, such a congested condition of traffic throughout the country had ever occurred before; that the conditions which prevailed upon the Texas & Pacific Railway were similar to those throughout the country; that during the fall of 1906 there was a shortage of cars due to the unprecedented movement of freight over its entire line and over the lines of connecting carriers,

and there was such an unprecedented offering of freight of all kinds at all stations along the lines of said defendant's road that with the utmost care it could not promptly handle the freight that was offered, and was compelled on account of such unprecedented condition to furnish the various shippers shipping facilities as fast as it could, but in the order in which freight was offered and applications for cars were made; that this condition was generally known throughout the country and was known to the plaintiff, and that defendant did not enter into a contract or agreement with the plaintiff or any of its codefendants to receive cars from the Missouri, Kansas & Texas and immediately place the same at Iatan for the use of plaintiff in making the shipment. It denied that it received said cars from the Missouri, Kansas & Texas Railway Company with such understanding, or that it was advised by said company that said cars were delivered to it for said purpose, but alleged that it was receiving and using all of the cattle cars it could get, either of its own or from connecting carriers, to fill orders which were on file at the time at various stations on its line, and that it uniformly adhered to the rule to furnish such cars in the order of their application, and that it did not and would not have agreed to receive cars to be immediately placed for the plaintiff out of their regular order ahead of others who had previously filed application or demand for cars. It denied that it in any manner induced the plaintiff to bring these cattle into Iatan prior to the time it was able to furnish cars for these shipments; that the congested condition was known to the plaintiff and to the Missouri, Kansas & Texas Railway Companies, and that this defendant did in fact furnish said cars as soon as possible and in the order of the plaintiff's application with reference to other applications on file at the time the plaintiff's demand for cars was made.

The Missouri, Kansas & Texas Railway Company and the Missouri, Kansas & Texas Railway Company of Texas filed answers similar to the answer of the Texas & Pacific Railway Company. A trial resulted in a judgment for plaintiff against the Texas & Pacific Railway Company for the sum of $1,756 damage to the cattle on account of delay in delivering the cars, and $57 expense of the plaintiff's agent at Iatan awaiting the arrival of cars, and $54, being the value of two head of cattle killed en route on said defendant's line; and a judgment in favor of the plaintiff against the Missouri, Kansas & Texas Railway Company of Texas and the Missouri, Kansas & Texas Railway Company in the sum of $351, being the value of thirteen head of cattle killed by injuries received on the lines of said companies between Fort Worth and Shawnee. The Texas & Pacific Railway Company only appeals.

The cause was tried by the court without the intervention of a jury. The court filed conclusions of fact, wherein he found that the Texas & Pacific Railway Company made the contract for the shipment of plaintiff's cattle substantially as set out in the petition. Appellant in various assignments complains of this finding. We have carefully examined the evidence and are of the opinion that it is amply sufficient to support the finding. The appellee owned 878 head of cattle near Iatan, which he desired to ship to Shawnee, Oklahoma. The appellant being

unable because of rush of business to furnish cars in which to ship said cattle, appellee arranged with the Missouri, Kansas & Texas Railway Company of Texas to furnish 31 stable cars in which to load and ship cattle from Iatan to Shawnee. The evidence shows that appellant agreed to receive said cars for such purpose, and did actually receive the same on November 27th, and started them west from Ft. Worth on November 27th and 28th, and after said arrangement had been made appellant notified appellee on November 27th that it had received the cars and would take them out at once for the cattle, and for appellee to at once get its cattle in readiness to be loaded, and that acting on this arrangement appellee did in fact get the cattle and had them near Iatan in readiness to be loaded. Appellant wholly failed to deliver any car or cars at Iatan until December 19, 1906, at which date it had there 20 cars, into which were loaded 528 head of plaintiff's cattle, and on December 21, 1906, it had at Iatan 10 more cars into which were loaded the remainder of the cattle, being 350 head.

Appellant contends that a carrier is not liable for inability to promptly accept and carry all freight tendered to it if there arises an unexpected press of business for the prompt handling of which its facilities are inadequate, provided the carrier could not have reasonably anticipated and provided against such situation by a timely and corresponding increase of its facilities. There is authority to support this contention. (Houston & T. C. R. Co. v. Smith, 63 Texas, 326.) This, however, could not relieve appellant if there was an express contract between appellant and appellee for the shipment of the cattle. In the case of Gulf, C. & S. F. Ry. Co. v. Hume Bros., 87 Texas, 219, our Supreme Court in disposing of a contention, the same as that made by appellant in this case, said: "If the agent of the railroad company made a contract with plaintiff or their agent to furnish cars at a given time to transport the cattle, then the fact that the shipment of cattle over the line of the railroad at that time was so great that it did not have cars sufficient to enable it to furnish the cars contracted for, would constitute no defense to the action for the breach of that contract." In the case of Southern Kansas R. R. Co. v. Morris, 99 S. W., 433, Judge Stephens, speaking for the Court of the Second District, said: "The court did not err in holding that the answer, pleading an unusual volume of business as an excuse for not complying with the contract, presented no defense. The case was not one of failure to furnish cars within a reasonable time after application had been made for them, but of failure to furnish cars at a given time according to contract." And in the more recent case of San Antonio & Aransas Pass Railway Co. v. Timon, 102 Texas, 222, the shipper went to an agent of the railway company and informed him that his cattle would be ready for shipment on a certain day, and requested the agent to have cars at his station at that time to ship cattle in, and the agent replied, "All right." The Supreme Court held that this was sufficient to show acceptance of the offer to ship on the day named, and a contract on the part of the railway company to have cars at its station on the day named by the shipper, and that the railway company was liable in damages for injury sustained by reason of failure to furnish the cars on the day specified by the shipper in his offer. See also Cross v.

McFadden, 1 Texas Civ. App., 461; Gulf, C. & S. F. Ry. Co. v. Hume, 6 Texas Civ. App., 653; Gulf, C. & S. F. Ry. Co. v. Hodge, 10 Texas Civ. App., 543. Having held that there was an express contract between appellant and appellee, whereby appellant agreed to receive from the Missouri, Kansas & Texas Railway Company of Texas, at Fort Worth, 31 empty stable cars, and deliver them to appellee at Iatan, in which to ship the cattle, and gave notice to appellee to get his cattle ready for shipment, the appellant was liable for a breach of this contract, notwithstanding the unexpected movement of freight and the shortage of cars in which to ship the same.

There was evidence showing a congestion of freight upon the line of the Texas & Pacific Railway Company during the months of November and December, 1906, and a shortage of cars on the part of the company in which to ship the freight. It was because of such shortage that appellee procured cars from the Missouri, Kansas & Texas Railway Company in which to ship his cattle. The appellant received these cars and agreed to forward same to Iatan. At the time no suggestion was made of any shortage of motive power; nor does the answer of the company set up a shortage in motive power to handle all freight tendered to it. The answer only sets up a shortage of cars in which to ship the cattle. With proper motive power the cattle could be shipped from Iatan to Ft. Worth in twenty-four hours. The appellant contends that if a carrier is suffering from a heavy congestion of traffic and press of business so that it can not promptly accept and handle in due order all of the freight that is being tendered for shipment, and during the continuance of such conditions shall contract to carry freight for a customer out of its regular order and ahead of others of its customers having prior right, such contract so made is illegal and can not be enforced, and if breached by the railway company affords the party with whom it was made no right of action that the courts will enforce. If the contract amounted to an unjust discrimination against other shippers having live stock to be shipped over appellant's railroad and who had furnished cars in which to ship the same and who were similarly situated as appellee, then it was unlawful and would not be enforced. (Sayles' Civ. Ann. Stats., art. 4574.) But the evidence must show an unjust discrimination as defined by the statute to make it unlawful. (Houston & T. C. Ry. Co. v. Stewart, 1 W. & W., sec. 1248; Houston & T. C. Ry. Co. v. Dinkins, 58 Texas, 107; Hoover v. Pennsylvania R. R., 156 Pa. St., 220, 36 Am. St. Rep., 58.) To be an unjust discrimination the evidence must show a preference given to appellee over shippers of live stock who had furnished the cars in which the same were to be transported. There was no evidence that any other shipper of live stock furnishing his own cars had priority over appellee.

Complaint is made by appellant of the court's failure to make certain specific findings of fact. The record shows a request by appellant for certain special findings of fact, but does not show that any exception was taken to the court's failure to make such findings. The motion for new trial complains of the finding that appellant contracted and agreed to accept the 31 cars from the Missouri, Kansas & Texas Railway Company, and informed plaintiff to get the cattle in readiness to be shipped. But no complaint is made therein of the court's failure to

make special findings on the issues submitted by appellant. There was no bill of exception taken and preserved in the record complaining of the court's failure in this respect. It is held that the failure of the court to file conclusions of fact when requested will not be considered on appeal without a bill of exception taken before the adjournment of court. (Landa v. Heermann, 85 Texas, 1.)

Finding no reversible error in the record the judgment is affirmed.

*Affirmed.*

Writ of error refused.